1-602, Peabody Essex Museum, Inc. v. United States Fire Insurance Company. If it may please the Court, my name is Thomas Elcock. I represent United States Fire Insurance Company. I would ask that I reserve three minutes for rebuttal. During the argument this morning, I would like to address three principal arguments raised in US Fire's brief. First, that the District Court's initial December 2007 summary judgment ruling that US Fire breached its duty to defend in shifting the burden of proving non-coverage to US Fire under its policy under the SJC's Polaroid decision was erroneous. The second issue I'd like to address is whether the Court erred in applying a fact-based allocation rather than a pro-rata, time-on-the-risk allocation under the SJC's Boston Gas decision. That was also an error committed by the District Court. And third and finally, I would like to address the District Court's granting summary judgment to the Museum on the Chapter 93A claim where the only that the District Court found occurred after it granted summary judgment on the duty to defend during the course of the litigation. And there was never a finding of a Chapter 2 Section 93A violation. In addition, where the 93A conduct that the judge found was, that the judge found that US Fire violated did not occur in trade or commerce, but only occurred in litigation. The first issue is the Polaroid issue. In February of 2004, the Museum gave notice to US Fire of an NOR letter issued by the Mass Department of Environmental Protection. One month later, US Fire responded to that notice and it did not, as the District Court found in summary judgment, refuse to defend that claim. Rather, on March 17, 2004, US Fire agreed to defend that claim subject to a reservation of rights. Once that reservation of rights was issued, the Museum decided to control the defense of the case and to continue to use its appointed defense counsel, Ropes and Gray. US Fire's reservation of rights transformed its obligation to provide a defense to the Museum to an obligation to reimburse defense costs. The District Court's December 2007 summary judgment order failed to apprehend the transformation of US Fire's duty to defend into a duty to reimburse defense costs. This led the District Court judge to shift... I'm afraid that I don't understand the distinction. The policy gives you a duty to defend. You're saying that you can somehow limit that duty to defend by filing a notice of reservation? I understand what the effect of a notice of reservation is, but I don't see how you can limit your duty to defend. Did you insist on taking over the defense of the matter? No, it was... No, you didn't. You just said that you would be willing to reimburse some defense costs up to some arbitrary limits that you set in your reservation of rights. We had a duty to reimburse reasonable defense costs. No, that's what you say, but that's not what your policy says. Your policy says you have a duty to defend. Yes. Okay, you attempted to limit that duty by saying, well, we're not going to defend this really. What we're going to do is reimburse your defense up to $200 an hour for attorneys, some other arbitrary limits. I don't see how that does anything to limit your original duty to defend. It may limit the damages that you have to pay if a court subsequently determines that your limitations on the amounts of payment were reasonable, or if there's evidence that the insured has acquiesced to those amounts. But I don't see how it changes your duty to defend the case. It changes it by operation of mass law. Under the policy, when we have a duty to defend, we have a corresponding duty or right to control the defense of the case. And under mass law, when you issue a reservation of rights letter, you forfeit the ability to control the defense. And in this case, the museum insisted that it control the defense through its appointed defense counsel, Ropes and Gray. So as a result of not having... As it had a right to do. Right. And you then have, yes, your duty to defend imposed on you a duty to reimburse their counsel fair and reasonable charges. Yes, and we didn't breach the duty to defend because we agreed to reimburse fair and reasonable charges. But you never did reimburse. And that breached the duty to defend. No, we made small payments at the outset of the litigation. But the reason we haven't made payments is because there continues to be a legal dispute as to whether or not the defense costs that we owed were both fair and reasonable, and whether they should have been allocated under Boston Gas. Did the museum ever give you a broken down bill setting out what the work was, what was ascribed to the NOR, what was ascribed to the other claim? Did that ever happen? No, it didn't. The bills were a mixture of both defense costs for the lawyer as well as for the defense costs incurred by the environmental consultant. And the work done by the environmental consultant was never sufficiently broken out until later in the case in 2010 when it was stipulated to as to what work the environmental consultant was doing was defense work as opposed to indemnity work. And as a result, the judge found us, you know, to have violated the duty to defend where the issues as to the amount that we owed, what it was owed for, what was reasonable, and what was not reasonable was decided against us on summary judgment in 2007, virtually at the outset of the case. And at that time, we owed no more than, under our view, $1,000 of unreimbursed bills from Robeson Gray. And as a result of not paying that $1,000 in legal fees that the museum was seeking, she shifted the burden of proof on us under Polaroid and made us then... But she didn't order you at that time to pay any amounts. She made a ruling that you would breach the duty of defend, to defend your issues which went to the amount of money that you owed because of that breach. Your problems with the charges as being reasonable, as being related to the scope of the work, etc. Those were all left for a later date. Well, I have two responses, Your Honor. First, her ruling in December of 07 was on summary judgment. Right. Taking the evidence in that facts and light most favorable to the non-moving party, there were issues of facts which should have prevented summary judgment. What issues of fact went to liability for breach of the duty to defend? Certainly not issues as to the reasonableness of fees. Those were the damages flowing from the breach. No, there were issues as to whether or not the fees that they were seeking payment for that we claimed that we had not paid were fair and reasonable. But that goes to the amount of damages from the breach. There's no question, alright, that I can see in the record, alright, that you paid what? Just over $600. Just over $600 on fees that were up in six figures as I understand it? Well, not at the time she made her initial summary judgment ruling. Pretty close. And because there were issues of fact, the non-payment also goes to the judge's finding of a 93A violation. But that was made at a different time. That was made at a different time. I'm talking about that first summary judgment. Because it's not enough that there were issues of fact. They have to be issues of material fact. And I didn't see anything in your brief that was persuasive to me that there were issues that went to liability for breach of the duty to defend. That issue seemed pretty one-sided. I saw plenty in your brief that might constitute good arguments as to how much money you would owe as a result of that breach. Well, the issue of fact that is material as to why the initial summary judgment ruling was inappropriate is that the testimony that the US Fire offered to its claims representative, Mr. Dantos, was that he never received the ropes and gray bills. That transcript was put before the judge. It's in the record. And as a result of Mr. Dantos taking the position that he had never received the bills, there was a disputed issue of fact as to whether those bills had been properly tendered and were therefore owed. And on summary judgment, she should not have decided that issue against the museum. And the second point of the 93A... Just correct me, because now you are talking an issue that goes to breach. My recollection was that the question wasn't whether someone on US Fire's side of the case had received the bills, but you're raising an issue as to whether this particular person had ever seen them. Well, he denied ever having received them. No, because you're saying that there is evidence that US Fire corporately, US Fire and all its agents who are involved in this matter, justice, et cetera, claims handlers, never received the bills. Not that the bills weren't reviewed by the proper person. The testimony was from this particular person who was handling the claim. Would the bills have normally gone to him? Yes. So he was the designated person dealing with the museum? Yes. And the contrary evidence put in by the museum was a certified mail receipt that the bills had been delivered to US Fire. So there was conflicting evidence in the record. And back to the 93A summary judgment decision issued four years later. In that decision, the judge said the only 93A violation was the failure to effectuate settlement after she made her initial duty to defend ruling. When all of these issues as to whether the amounts were fair and reasonable, whether they had been received by US Fire, what was defense, what was indemnity by the environmental consultant, all took place after that initial summary judgment ruling. And those issues remained live and in dispute for over four years in this litigation. Your reservation of rights, I assume, went to liability. Whether you had to, I'm sorry, to indemnity. Yes. And the reservation said we reserved the right to disclaim a duty to indemnify, but we agreed to defend under a reservation of rights. And where the museum then controlled the litigation, the reservation or the duty to defend is transformed into a duty to reimburse defense costs. Now, you know... In your policy, does it say reasonable defense costs? No, but that's... Is there any definition of defense costs? That's the McGowan case, and that's developed under mass law, that it's not... It's not a policy-driven issue. Exactly. And it's a duty to reimburse reasonable defense costs. And because the judge, in her initial ruling, failed to appreciate that we did agree to defend, we didn't breach that duty. At most, we didn't pay the two bills that had been sent, which our fellow disputed he receiving. She shifted the burden under Polaroid. How much were those bills for, roughly? We had agreed to pay a 40 percent share. How much were the bills for? I believe those two bills are 40... The two bills totaled about $1,000. And we had a 40 percent share, so we paid $625. I'm sorry. The bills that the fellow who testified said he never got? They were the two bills. At that point, there had been five bills, I believe, issued by Ropes and Gray. Three were for the Heritage Private Claim. Two were for the NOR Claim. The total bills, I think, were $1,200 or something. And the amount that we allegedly didn't pay until after the summary judgment motion was filed by the museum was the $625. And it was that failure to make an earlier payment the judge said was a breach of our duty to defend. What? Go ahead. No, you go. Whose decision was it that you only owed 40 percent of the bills? That was a statement, a limitation in your reservation of rights. And that was through an agreement? But that's not... With the other insurer? Has that ever been agreed to? That was an agreement with the other insurer. But we're talking now about Peabody Essex, not about the other insurer. You owed Peabody Essex the duty to defend. They had a right to expect you to pay full defense costs. And at that point... The 40 percent is as arbitrary a limitation as your limitation to $200 an hour. And if that was a mistake, Judge, the remedy was for them to claim or demand payment or to bring an action for payment. The remedy wasn't the one imposed by the district judge to shift the burden under Polaroid. I just had a couple more questions on the record about that. So PEM introduced the receipt showing that they'd sent something certified. And what's the date of that? When were these bills actually submitted to your client? I don't remember off the top of my head the exact date, but it was more than a year before the summer judgment ruling. That's my question. Okay. And I'll take my reserved time. Thank you. Good morning. May it please the Court, I'm Jeremy Evans. I'm an associate at Foley Hoag, and I represent the Peabody Essex Museum. These cross appeals raise a number of issues, but they fall into two general categories. One we've been touching on with U.S. Fires presentation, which is the consequences of U.S. Fires conduct. And the other has to do with the application in this action of the Supreme Judicial Court's decision in Boston Gas. Turning to the first issue, the Massachusetts law on the duty to defend is clear. Massachusetts law on the consequences of a breach of the duty are clear. And Massachusetts decisions have made it perfectly clear that the punitive measures under 93A against insurers who don't satisfy their obligations are intended to be severe. So if we look at U.S. Fires conduct, and there's no excuse here for it. There's no reason to relieve them of the consequences of that conduct. We have an insurer that internally recognized a defense obligation, conveyed an acknowledgment of it, and yet did nothing to discharge that obligation. Finally, the nothing occurred on the payment of bills because your client, the museum, decided once there was a reservation of rights, which is not unusual in insurance cases, to take over the defense itself and hired a law firm to do that. That's correct. So thus far, as far as I can see, there's nothing unusual about what happened up to that point. Up to that point, but a reservation of rights doesn't relieve the insurer of an obligation to pay defense costs, and that's what it didn't do here. And wasn't the argument over whether the defense costs were reasonable at the point where the judge made her summary judgment ruling, shifting the burden of proof? Well, there were, and I want to respond to one thing that U.S. Fire indicated that has to do with the non-receipt of the bills. There can't have been a dispute of their reasonableness if U.S. Fire says that they hadn't received them. The fact of the matter is that the bills had been received at U.S. Fire's adjuster, but apart from that, we had submitted numerous copies of the bills throughout the course of the litigation, both in response to formal discovery and in response to requests by counsel. And so, I don't think that it can possibly be U.S. Fire's position that having not received the first set, excuse it of any obligation to pay something. At the time of the motion for summary judgment, what's your evidence that the bills were received? The evidence consists of, well, the first set, we have a FedEx affidavit that it was delivered to an R. Button, who Mr. Dantos identified as someone in his office. We have formal discovery, we have also a number of informal production of materials in response to letters to U.S. Fire, and also rolling requests for reimbursement for bills as they were incurred. Okay, but up to the time of summary judgment, what is the total amount that had been billed? As I stand here, I don't know, but it has two components. One are legal defense costs, and the other are defense-related environmental consulting costs. Can you ballpark either one of those? The environmental consulting costs, defense-related environmental costs were the higher portion, certainly, but I don't, as I stand here, know the amount. And I think that Were they in the low numbers or were they high numbers? It sort of makes a little bit of difference on, at least contextually, on what they were doing and what they're not doing. I suppose that's true. I mean, I would say that the question of breach is separate from the question of damages flowing from the breach, and I don't want to misrepresent the record, and I just don't know. But we were talking about significant expenses that the museum was incurring without reimbursement from U.S. Fire. I'm just totally lost here, so help me. These are your issues. I'm just trying to understand them. Are we talking about $1,000, $1,200? Are we disputing over what they received? That's all I want to know. Well, certainly going to, the parties have stipulated to the reasonableness and the amount of unreimbursed defense costs, and it's $350,000. Yeah, but that's now. I'm talking about then. I'm talking about the point where the judge did what she did in her summary judgment ruling. What, somebody must know what was the approximate billing at that point. Six figures are very close to what would be my best guess, but as I counsel, I don't want to pretend that I'm not disturbed that you stand up here and guess at an issue that's as important as that. Will you file, not will you, you will file with the court within 48 hours a statement of your view of the record as to what the amount of the legal and defense costs that had been billed to U.S. Fire as of the date of summary judgment is as revealed by the record. And I'll be glad to do that, Your Honor. Yes, add to it, please. Yeah, and how much, at what time that they did this, so that we know exactly when she was faced with your summary judgment motion, what you would bill and at what time you would bill it. What was the difference in time from the date it was billed to the date of her summary judgment motion granted? Not editorializing. We want the figures and the dates and counsel for U.S. Fire should have 48 hours to respond to that submission, if he deems it inaccurate. So if we move on then to the consequences for breaching the duty to defend, the Polaroid decision is pretty clear. I mean, it establishes a bright line rule. It's not like some jurisdictions that has an automatic indemnity rule. Rather, it reverses the burdens of proof, such that an insurer that breaches its defense obligation has the burden to prove non-coverage. And so it was not incorrect for the court to apply that ruling here, where it had found a breach. Now, if we go on to the other consequences of U.S. Fire's conduct, and this can go to some of the rest of the case in the history of nonpayment. Now, we brought this action and they didn't pay. We moved for summary judgment, they paid $611. We established through summary judgment that they had a duty and breached it, didn't yield any further payment. We reached a compromise on the question of reasonableness, reached a stipulation as the amount reasonableness of defense costs of $350,000. And U.S. Fire has paid only a fraction of that amount to this day. Faced with that series of facts and U.S. Fire's failing even to pay what would be, what it contends would be its pro-rata allocated share of stipulated defense costs, the court determined that U.S. Fire had breached 93A unknowingly and willfully. It's hard to see how it would be anything other than knowing and willful to withhold payment. And the court did, however, err in not applying the measure of damages required under 93A. When the museum first moved for summary judgment on 93A, it set forth in a separate argument in its brief with a separate heading based on the language of the statute and the Granger case that it was entitled to a multiple of the entire judgment apart from on the double damages but measured as a doubling of the amount of unreimbursed defense costs. Subsequent to that, the Massachusetts Supreme Judicial Court issued its decision in the Rhodes case. And the Rhodes case makes a number of things clear about 93A damages. And it makes clear just how punitive they are intended to be. First, double damages under 93A are in the rest of the judgment that is multiplied. Also, what is multiplied is the judgment and all of its components, including interest, for example, and including, as the Granger case suggests, attorney's fees that are awarded as part of that judgment. And here, that was not the measure of damages awarded. The reason why the, and in fact, U.S. Fire does not award damages that we say that Rhodes established firmly as being the rule of Massachusetts. They don't actually say that we have Rhodes wrong. They just say that we somehow waive the argument or have a higher standard of review because once the Rhodes decision came down, we moved the court to correct its error and award the correct measure of damages, which it declined to do based on an erroneous determination that the and didn't argue for such a measure of damages when, in fact, the museum had. So, here, the But the judgment that you want doubled is the judgment that includes the indemnity. That's correct. Okay. So, but you haven't yet told us why the court's ruling, the jury verdict and the court's subsequent ruling on the indemnity portion is correct, why that judgment shouldn't be, shouldn't be vacated. And let me cut right to the chase. The thing that most troubles me about that judgment is, aside from the dispute that the parties seem to be having about which method of apply, I'm struggling with the notion of how you can apply any mallocate, any allocation without a start date and an end date. And I understand there's a stipulation as to the end date, present time. All right. But as to the start date, it appears to me that the start date that we've got in the, in the record and used to compute that judgment is a date that the district court plucked out of thin air. Yes, the failure of proof is being tantamount to an affirmative finding that it began on the first day of its policy. But I, I, I failed to see the rationale for that. I failed to see any rationale. The Polaroid finding shifts the, the burden of, of proof with respect to whether the incident is covered or non-covered. You can't extend the Polaroid, the Polaroid burden shifting to the start date, can you? Well, either you punish the insured for the insurer's failure of proof by coming up with some other date. You don't punish anyone. You, you get, you get a finding on it. I mean, there, there was evidence presented to the jury about the start date. The jury didn't answer those questions. Actually, Your Honor, I would disagree in this, in this respect. Yeah. The jury, in fact, did answer the question of whether U.S. Fire had satisfied its burden to prove a start date and said, no. Yeah. They hadn't. Yeah. And so our position is, given that failure of proof, there simply isn't the prerequisites required to allocate. Any further questions, Your Honor? Thank you. Counsel? May it please the Court, Brian Fox for third-party defendant, appellee Ace PNC. Ace is one of the appellees in the U.S. Fires Appeal. It's 13-1528, but is not an appellee in the Museum's Cross Appeal 13-1602. In fact, the U.S. Fire has failed to say any authority, either in its briefing or orally, to support its remarkable proposition that the District Court's denial of U.S. Fire's motion for leave to amend its third-party complaint made 34 months after U.S. Fire filed its third-party complaint was an abuse of discretion. In denying U.S. Fire's motion for leave to appeal, the District Court also denied U.S. Fire's motion for leave to appeal, but all that had transpired within it, including nearly two years for discovery, the conclusion of pre-trial dispositive motion practice in which Ace was granted summary judgment dismissing U.S. Fire's third-party complaint, and the completion of various pre-trial activity between the two remaining parties, the Museum and U.S. Fire, for a trial scheduled to begin 10 days later. The District Court also was not presented with any reason, much less substantial and convincing reason, why U.S. Fire could not have moved to amend far earlier in the case. In fact, the sole basis of U.S. Fire's proposed amendment, its so-called newly discovered evidence that Ace supposedly had failed to pay defense bills owed to the Museum, was actually asserted by U.S. Fire at the outset of the case in its third-party complaint filed 34 months earlier. And U.S. Court, why it could not have obtained the so-called newly discovered evidence during the lengthy discovery phase of the case, or why it did not even attempt to do so. So the District Court had before it a number of extreme facts favoring denial of the motion for leave to amend. The 34-month gap that the third-party complaint had already been dismissed on summary judgment, and the absence of a substantial and convincing reason why U.S. Fire could not have so moved earlier in the case. In fact, had the District Court permitted U.S. Fire's untimely amendment under these extreme circumstances, it would have been tantamount to an invitation to all litigants who already had their claim adjudicated adversely against them, to simply add new theories of recovery to the same facts as originally pled in an attempt to remain in court. Certainly then, the District Court's denial of U.S. Fire's motion for leave to amend was not an abuse of discretion. Thank you. If it may please the Court, first I'd like to respond to Museum's cross-appeal argument about the doubling of the entire judgment under Rhodes. I sent last week a letter under Rule 28J, bringing to the Court's attention the new SJC decision in Auto Flats. I think that decision controls. Auto Flats makes clear that in the absence of an underlying judgment, which did not occur in this case, that the measure of damages to be doubled is the actual damages, and in granting summary judgment for the Museum against U.S. Fire, Judge Gertner limited the doubling of the damages only to the Museum's actual damages of unreimbursed defense costs. The entire judgment should not be doubled, even if the 93A decision stands. Secondly, Judge Selye, the start date issue is a huge issue in this case. In fact, both parties on appeal, the Museum as well as U.S. Fire, agree, according to their briefs, that the fictitious start date pulled out of the air by Judge Gertner was erroneous. This was a progressive injury case. From the beginning, the Museum tendered the claim to U.S. Fire on the basis of it was a progressive injury. When Judge Gertner ruled in her initial summary judgment ruling a duty to defend, shifting the burden of proof under Polaroid to U.S. Fire, she nevertheless said to the Museum, you still have a burden of coming forward with some evidence of injury during your policy period. That's from 1983 to 1986. The only way the Museum satisfied that burden, both on summary judgment on indemnity and at the jury trial, was through its expert, Mr. Reardon, who testified that the start date for the That's the Museum's evidence. They benefited from that evidence. Judge Gertner accepted that evidence in both granting summary judgment on indemnity as well as finding that there would be fact-based allocation under Boston Gas. All right. Let me ask you a practical question. I read in the record a after the jury had come in, seemed to indicate that the parties were willing to have the district, that the parties gave to the district judge the authority to resolve any issues that were left unresolved by the jury verdict. Does that mean that if we accept your argument, number one, I assume that that would mean the district judge could make any resolution that was supported by the evidence and might mean that we would have to vacate the 1983 start date. But does that mean that on remand, if we do that, that this issue goes back to the district judge rather than to the jury? I think it goes back to the district judge for the district judge to make the initial decision as to whether to hear the case on a case-stated basis, as it was a second jury to determine the start date. Okay. That's fair. If no further questions, I'll rest on our brief. Thank you. So we'll hear from Peabody Essex by close of business on Thursday, and any reply will be due by close of business on Monday. Thank you. All rise.